UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

RUBIN LAMONT STONE,

        Plaintiff,

v.

ROBERT CROMPTON, *et al.*,

        Defendants.

                              /

Case No. 1:11-cv-821

Hon. Robert J. Jonker

**REPORT AND RECOMMENDATION**

This is a civil rights action brought by a state prisoner incarcerated by the Michigan Department of Corrections ("MDOC") pursuant to 42 U.S.C. § 1983. This matter is now before the court on a motion for summary judgment filed by defendants Nicki Monroe, Vickie Jensen, Jeannie Stephenson and Terry Malloy (docket no. 21). Defendants' motion is unopposed.

      **I.**      **Background**

Plaintiff's complaint names the following defendants: Dr. Robert Crompton (physician at Oaks Correctional Facility ("ECF")); Terry Malloy (Region I Director of the MDOC's Bureau of Health Care Services); RN Nicki J. Monroe (a nurse at ECF); RN Vickcie Jensen (a nurse at ECF); RN Jeannie Stephenson (a nurse at Region I); and "Unknown" (the "Administrator for Bureau of Health Care Services, Policy and Practice Maker"). Plaintiff has sued defendants in both their official and personal capacities.

Plaintiff has alleged that defendants were deliberately indifferent to his serious medical needs in violation of the Eighth Amendment based upon the following facts.[1] Plaintiff was seen by a Physician's Assistant on August 31, 2010, while incarcerated at the Handlon Training Unit ("MTU"), who determined that plaintiff needed x-rays to determine the cause of the pain in his back and feet. Compl. at ¶ IV (docket no. 1). On September 7, 2010, plaintiff was placed in segregation at MTU and never received the x-rays. *Id.* On September 24, 2010, plaintiff was transferred to ECF, where he made requests to see a specialist about his back and feet and inquired about the x-rays. *Id.* Defendants Dr. Crompton, RN Monroe and RN Jensen have at times ignored plaintiff's requests for treatment and deliberately made "excuse after excuse" for failing to provide him with the x-rays previously ordered at MTU. *Id.* When plaintiff grieved their behavior, defendants Malloy and RN Stephenson refused to properly address his claims in the grievance. *Id.* Defendant Malloy also came to the correctional facility and watched as Dr. Compton "pretend[ed] to evaluate and examine" plaintiff. *Id.* The unknown defendant (the "Administrator") is responsible for the policies and practices for the other defendants who are under his/her authority. *Id.* Plaintiff seeks injunctive relief "to remedy his need of full medical care" and damages in the amount of $60,000,000.00.

## II. Defendant's motion for summary judgment

### A. Legal Standard

Defendants have moved for summary judgment on various grounds, including failure to exhaust administrative remedies. "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a

---

[1] While plaintiff has alleged that he is a "qualified individual" under the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12102 and 12131, he does not allege that defendants violated the ADA.

matter of law." Fed. R. Civ. P. 56(a). Rule 56 further provides that "[a] party asserting that a fact cannot be or is genuinely disputed must support the assertion by":

> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1).

In *Copeland v. Machulis*, 57 F.3d 476 (6th Cir. 1995), the court set forth the parties' burden of proof in deciding a motion for summary judgment:

> The moving party bears the initial burden of establishing an absence of evidence to support the nonmoving party's case. Once the moving party has met its burden of production, the nonmoving party cannot rest on its pleadings, but must present significant probative evidence in support of the complaint to defeat the motion for summary judgment. The mere existence of a scintilla of evidence to support plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff.

*Copeland*, 57 F.3d at 478-79 (citations omitted). "In deciding a motion for summary judgment, the court views the factual evidence and draws all reasonable inferences in favor of the nonmoving party." *McLean v. 988011 Ontario Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000).

Here, defendants' motion is unopposed. "The fact that there has been no response to a summary judgment motion does not, of course, mean that the motion is to be granted automatically." *Champion v. Artuz*, 76 F.3d 483, 486 (2nd Cir. 1996). However, when a motion for summary judgment is unopposed, "[n]othing in either the Rules or case law supports an argument that the trial court must conduct its own probing investigation of the record" to demonstrate the

existence of genuine issues of material fact. *Guarino v. Brookfield Township Trustees*, 980 F.2d 399, 405 (6th Cir. 1992).

### B. Failure to exhaust

#### 1. Exhaustion requirement

The PLRA, 42 U.S.C. § 1997e, provides that a prisoner bringing an action with respect to prison conditions under 42 U.S.C. § 1983 must first exhaust available administrative remedies. *See Porter v. Nussle*, 534 U.S. 516 (2002); *Booth v. Churner*, 532 U.S. 731 (2001). A prisoner must exhaust available administrative remedies, even if the prisoner may not be able to obtain the specific type of relief he seeks in the state administrative process. *See Porter*, 534 U.S. at 520; *Booth*, 532 U.S. at 741. One reason for creating prisoner grievance procedures under the PLRA was to create an administrative record for the court.

> Requiring exhaustion allows prison officials an opportunity to resolve disputes concerning the exercise of their responsibilities before being haled into court. This has the potential to reduce the number of inmate suits, and also to improve the quality of suits that are filed by producing a useful administrative record.

*Jones v. Bock*, 549 U.S. 199, 204 (2007). In order to properly exhaust administrative remedies, prisoners must complete the administrative review process in accordance with the deadlines and other applicable procedural rules. *Id.* at 218; *Woodford v. Ngo*, 548 U.S. 81, 90-91 (2006). "Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to 'properly exhaust.'" *Jones*, 549 U.S. at 218.

#### 2. MDOC grievance process

The MDOC requires prisoners to follow a three-step process to exhaust grievances. *See* Policy Directive 03.02.130 (effective July 9, 2007). A prisoner must first attempt to resolve a problem with the staff member within two business days of becoming aware of the giveable issue,

4

unless prevented by circumstances beyond his or her control. *Id.* at ¶ P. If the issue is not resolved, then the grievant may file a Step I grievance on the prescribed form within five business days after the grievant attempted to resolve the issue with appropriate staff. *Id.* at ¶¶ P and R. The Policy Directive provides the following directions for completing grievance forms:

> The issues should be stated briefly but concisely. Information provided is to be limited to the <u>facts</u> involving the issue being grieved (i.e., who, what, when, where, why, how). Dates, times, places and names of all those involved in the issue being grieved are to be included.

*Id.* at ¶ R (emphasis in original). The prisoner must send the Step I grievance to the appropriate grievance coordinator. *Id.* at ¶ V. If the prisoner is dissatisfied with the Step I response, or does not receive a timely response, he must request the appropriate form and send it to the Step II Grievance Coordinator. *Id.* at ¶ BB. Finally, if a prisoner is dissatisfied with the Step II response, or does not receive a timely response, he must send a completed Step III grievance, using the appropriate form, to the Grievance and Appeals Section. *Id.* at ¶ FF.

### 3. Defendants RN Monroe, RN Jensen, RN Stephenson and Director Malloy are not the subject of a grievance

Defendants have identified the grievance applicable to plaintiff's claim, Grievance No. ECF 11-02-0399-12d1 (Grievance 399). *See* Grievance No. 399 (docket no. 22-3).[2] This grievance, filed on February 3, 2011, relates to plaintiff's dispute regarding the x-rays allegedly ordered at MTU in August 2010. *Id.* The Step I grievance form does not name anyone as required by Policy Directive 03.02.130 ¶ R, but simply refers to "ECF - Oaks Health Care Staff" and refers to the attached "Statement of Facts" for details. *Id.* The only person named in the plaintiff's "Statement of Facts" is Nurse Bellinger, whom plaintiff claims has "deliberately lied" to him

---

[2] As discussed, *supra*, plaintiff has not responded to defendants' motion.

concerning his serious medical needs and his need for x-rays. *Id.* Nurse Bellinger is not a party to this action. RN Monroe and RN Jensen were not named in the grievance, but signed the Step I response. *Id.* RN Stephenson is not named in the grievance, but signed the Step II response. *Id.* Region I Director Malloy's name does not appear in the grievance.[3] Based on this record, plaintiff has failed to properly exhaust a grievance against defendants Malloy, Monroe, Jensen or Stephenson. *Jones*, 549 U.S. at 218; *Woodford*, 548 U.S. at 90-91; *Sullivan v. Kasajaru*, 316 Fed. Appx. 469, 470 (6th Cir. 2009) (affirming dismissal for lack of exhaustion where prisoner failed follow requirements of Policy Directive 03.02.130, which explicitly required him to name each person against whom he grieved, citing *Jones* and *Woodford*). Accordingly, defendants Malloy, Monroe, Jensen and Stephenson are entitled to summary judgment on the Eighth Amendment claim for lack of exhaustion.

Furthermore, neither defendants Monroe, Jensen nor Stephenson provided plaintiff with medical care. Rather, they simply responded to his grievance. A prison official whose only role involved the denial of an administrative grievance cannot be liable under § 1983. *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). "The mere denial of a prisoner's grievance states no claim of constitutional dimension." *Alder v. Correctional Medical Services*, 73 Fed. Appx. 839, 841 (6th Cir. 2003). *See Martin v. Harvey*, 14 Fed. Appx. 307, 309 (6th Cir. 2001) (observing that the denial of

an appeal of a grievance complaining of inadequate medical care is not the same as the actual denial of a request to receive medical care).

---

[3] Although plaintiff alleged that defendant Malloy failed to properly address his grievance at Step II, Malloy did not sign the Step II response. While it is possible that defendant Malloy was involved in the Step III response, the court notes that the unidentified signature on the Step III grievance response from the Bureau of Health Care Services is unintelligible. *See* Grievance No. 399.

### III.     Recommendation

For the reasons set forth above, I respectfully recommend that the motion for summary judgment filed by defendants Monroe, Jensen, Stephenson and Malloy (docket no. 21) be **GRANTED** and that they be **DISMISSED** from this action.


Dated:  August 2, 2012                                    /s/ Hugh W. Brenneman, Jr.
                                                          HUGH W. BRENNEMAN, JR.
                                                          United States Magistrate Judge


ANY OBJECTIONS to this Report and Recommendation must be served and filed with the Clerk of the Court within fourteen (14) days after service of the report.  All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b).  Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order.  *Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).