UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

RUBIN LAMONT STONE,

        Plaintiff,

vs.

ROBERT CROMPTON, *et al.*,

        Defendants.
                                      /

Case No. 1:11-CV-821

Hon. Robert J. Jonker

**REPORT AND RECOMMENDATION**

        This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983. This matter is now before the court on defendant Dr. Robert Crompton's motion for summary judgment (docket no. 35) and plaintiff's motion for voluntary dismissal (docket no. 39). Neither motion is contested. The court will also consider a Notice of impending dismissal and Order to show cause as to the defendant referred to as "Administrator for Bureau of Health Care Services, Policy and Practice Maker" (docket no. 42).

    **I.**    **Background**

        Plaintiff's complaint names the following defendants: Dr. Robert Crompton (physician at Oaks Correctional Facility ("ECF")); Terry Malloy (Region I Director of the MDOC's Bureau of Health Care Services); RN Nicki J. Monroe (a nurse at ECF); RN Vickcie Jensen (a nurse at ECF); RN Jeannie Stephenson (a nurse at Region I); and "Unknown" (the "Administrator for Bureau of Health Care Services, Policy and Practice Maker"). Plaintiff has sued defendants in both their official and personal capacities.

Plaintiff has alleged that defendants were deliberately indifferent to his serious medical needs in violation of the Eighth Amendment based upon the following facts.[1] Plaintiff was seen by a Physician's Assistant on August 31, 2010, while incarcerated at the Handlon Training Unit ("MTU"), who determined that plaintiff needed x-rays to determine the cause of the pain in his back and feet. Compl. at ¶ IV (docket no. 1). On September 7, 2010, plaintiff was placed in segregation at MTU and never received the x-rays. *Id.* On September 24, 2010, plaintiff was transferred to ECF, where he made requests to see a specialist about his back and feet and inquired about the x-rays. *Id.* Defendants Dr. Crompton, RN Monroe and RN Jensen have at times ignored plaintiff's requests for treatment and deliberately made "excuse after excuse" for failing to provide him with the x-rays previously ordered at MTU. *Id.* When plaintiff grieved their behavior, defendants Malloy and RN Stephenson refused to properly address his claims in the grievance. *Id.* Defendant Malloy also came to the correctional facility and watched as Dr. Compton "pretend[ed] to evaluate and examine" plaintiff. *Id.* The unknown defendant (the "Administrator") is responsible for the policies and practices for the other defendants who are under his/her authority. *Id.* Plaintiff seeks injunctive relief "to remedy his need of full medical care" and damages in the amount of $10,000,000.00 per defendant ($60,000,000.00). *Id.* at ¶ V. The court previously dismissed defendants Monroe, Jensen, Stephenson and Malloy. *See* Order (docket no. 40).

## II.      Notice of impending dismissal and Order to show cause

On November 29, 2012, this court entered a notice of impending dismissal and order to show cause as to an unknown party listed on plaintiff's complaint as "Administrator for Bureau

---

[1] While plaintiff has alleged that he is a "qualified individual" under the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12102 and 12131, he does not allege that defendants violated the ADA.

Health Care Services, Policy and Practice Maker." *See* Notice and Order (docket no. 42). This order required plaintiff to show case in writing within 14 days as to why this action should not be dismissed without prejudice for lack of prosecution as to this unknown, unidentified and unserved defendant pursuant to Fed. R. Civ. P. 4(m) and W.D. Mich. LCivR 41.1. *Id.* Plaintiff has not responded to the show cause order as directed. Accordingly, the undersigned recommends that the defendant identified by plaintiff as "Administrator for Bureau Health Care Services, Policy and Practice Maker" be dismissed without prejudice for lack of prosecution.

### III. Defendant's motion for summary judgment

#### A. Legal Standard

Plaintiff seeks relief pursuant to 42 U.S.C. § 1983, which confers a private federal right of action against any person who, acting under color of state law, deprives an individual of any right, privilege or immunity secured by the Constitution or federal laws. *Burnett v. Grattan*, 468 U.S. 42, 45 n. 2 (1984); *Stack v. Killian*, 96 F.3d 159, 161 (6th Cir.1996). To state a § 1983 claim, a plaintiff must allege two elements: (1) a deprivation of rights secured by the Constitution and laws of the United States, and (2) that the defendant deprived him of this federal right under color of law. *Jones v. Duncan*, 840 F.2d 359, 360-61 (6th Cir. 1988); 42 U.S.C. § 1983.

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Rule 56 further provides that "[a] party asserting that a fact cannot be or is genuinely disputed must support the assertion by":

> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or

(B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1).

In *Copeland v. Machulis*, 57 F.3d 476 (6th Cir. 1995), the court set forth the parties' burden of proof in deciding a motion for summary judgment:

> The moving party bears the initial burden of establishing an absence of evidence to support the nonmoving party's case. Once the moving party has met its burden of production, the nonmoving party cannot rest on its pleadings, but must present significant probative evidence in support of the complaint to defeat the motion for summary judgment. The mere existence of a scintilla of evidence to support plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff.

*Copeland*, 57 F.3d at 478-79 (citations omitted). "In deciding a motion for summary judgment, the court views the factual evidence and draws all reasonable inferences in favor of the nonmoving party." *McLean v. 988011 Ontario Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000).

Here, defendant's motion is unopposed. "The fact that there has been no response to a summary judgment motion does not, of course, mean that the motion is to be granted automatically." *Champion v. Artuz*, 76 F.3d 483, 486 (2nd Cir. 1996). However, when a motion for summary judgment is unopposed, "[n]othing in either the Rules or case law supports an argument that the trial court must conduct its own probing investigation of the record" to demonstrate the existence of genuine issues of material fact. *Guarino v. Brookfield Township Trustees*, 980 F.2d 399, 405 (6th Cir. 1992).

### C. Deliberate indifference as to Dr. Crompton

Defendant Dr. Crompton moves for summary judgment on ground that he was not deliberately indifferent to plaintiff's serious medical needs. It is well established that an inmate has

4

a cause of action under § l983 against prison officials for "deliberate indifference" to his serious medical needs, since the same constitutes cruel and unusual punishment proscribed by the Eighth Amendment. *Estelle v. Gamble*, 429 U.S. 97 (l976). A viable Eighth Amendment claim consists of an objective and a subjective component. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). A court considering a prisoner's Eighth Amendment claim must ask both if the alleged wrongdoing was objectively harmful enough to establish a constitutional violation and if the officials acted with a sufficiently culpable state of mind. *Hudson v. McMillian*, 503 U.S. 1, 8 (1992).

The objective component requires the infliction of serious pain or failure to treat a serious medical condition. *Hudson*, 503 U.S. at 8-9. With respect to the infliction of serious pain, courts recognize that "[b]ecause routine discomfort is part of the penalty that criminal offenders pay for their offenses against society, only those deprivations denying the minimal civilized measure of life's necessities are sufficiently grave to form the basis of an Eighth Amendment violation." *Id.* at 8 (internal citations and quotation marks omitted). Similarly, "[b]ecause society does not expect that prisoners will have unqualified access to health care, deliberate indifference to medical needs amounts to an Eighth Amendment violation only if those needs are 'serious.'" *Id.* at 9.

The subjective component requires that the defendant act with deliberate indifference to an inmate's health or safety. *See Wilson v. Seiter*, 501 U.S. 294, 302-03 (1991). To establish the subjective component, the plaintiff must show that "the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837. Mere negligence in diagnosing or treating a medical condition does not constitute an Eighth Amendment violation. *Id.* at 835. Thus,

5

a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner. In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs. It is only such indifference that can offend "evolving standards of decency" in violation of the Eighth Amendment.

*Estelle*, 429 U.S. at 106.

"[A] plaintiff alleging deliberate indifference must show more than negligence or the misdiagnosis of an ailment." *Comstock v. McCrary*, 273 F.3d 693, 703 (6th Cir. 2001). *See Clemmons v. Bohannon*, 956 F.2d 1523, 1529 (10th Cir. 1992) ("the Eighth Amendment does not apply to claims based on inadvertent failure to provide adequate care, negligent misdiagnosis, or an inmate's difference of opinion with medical personnel regarding diagnosis or treatment"). "It is obduracy and wantonness, not inadvertence or error in good faith, that characterize the conduct prohibited by the Cruel and Unusual Punishment Clause." *Whitley v. Albers*, 475 U.S. 312, 319 (1986).

Dr. Crompton has provided a comprehensive summary of the medical treatment provided to plaintiff at MTU and ECF which is supported by citations to the medical record and affidavits. Because plaintiff has alleged, among other things, that Dr. Crompton ignored his requests for medical treatment, the court will reproduce this uncontested summary in its entirety:

> Plaintiff suffers from a history of chronic low back pain and foot pain. (*See* Affidavit of Robert Crompton, M.D., attached hereto as Exhibit A, ¶ 5). Plaintiff's medical records reveal that he reported on numerous occasions that he has suffered from chronic pain since 1987 when he injured his back and feet during a fall from a 5-story building. (*Id.*) Plaintiff has also reported a history of degenerative disc disease. (*Id.*) Significantly, Plaintiff has routinely received medical treatment for his complaints of back and foot pain throughout his incarceration. (*Id.*, ¶¶ 5-31; Exhibit B). Plaintiff's medical records demonstrate that he has received extensive medical care and treatment for complaints of low back pain and foot pain dating back

6

to 2001, including numerous pain medications and various accommodations. (*Id.*, ¶ 6).

On August 31, 2010, Plaintiff was examined by a physician's assistant at Handlon Training Unit ("MTU") for hypertension, chronic lumbago (low back pain) and chronic bilateral foot pain. (*Id.*, ¶ 7). At that time, Plaintiff reported that the NSAID pain medication he had been receiving, Lodine, helped with his pain; however, he complained that it was no longer on the medication formulary and that he had been directed to purchase a different NSAID pain medication, Ibuprofen, from the prison store. (*Id.*) Examination of Plaintiff's back revealed no lumbar spine tenderness, as well as normal mobility and normal curvature. However, the physician's assistant prescribed Plaintiff a new NSAID (Mobic) for his pain and ordered an x-ray of Plaintiff's lower spine. (*Id.*) Plaintiff received a referral to a radiologist with an appointment scheduled for September 7, 2010. (*Id.*) During the August 31, 2010 appointment, Plaintiff also reported chronic pain in his feet and ankles for which he received high top athletic shoes; although, it was noted that his shoes were worn and needed to be replaced. (*Id.*, ¶ 8). Examination revealed that Plaintiff's ankles had swelling and mild pain with motion. (*Id.*) As a result, in addition to the prescription for pain medication, Plaintiff was directed to submit a kite for replacement shoes. (*Id.*)

When an inmate at MTU is scheduled for an x-ray, it is recorded in an appointment book that is maintained by the facility because x-rays are not performed onsite at MTU; but rather, are performed offsite at Michigan Reformatory. (*See* Affidavit of Catrina Hyde, attached hereto as Exhibit C, ¶ 2). A review of the appointment book entries from September 6 through September 12, 2010, reveals that an x-ray for Plaintiff was scheduled to be performed on September 9, 2010, but the inmate refused the appointment. (*Id.*, ¶ 3 and Attachment 1).

Plaintiff was transferred to Oaks Correctional Facility on September 21, 2010. (Exhibit A, ¶ 9). Upon arrival, Plaintiff had active special accommodation orders for a bottom bunk profile and prescription high top athletic shoes. (*Id.*) Plaintiff's medical records show that on October 14, 2010, he was seen for complaints of urinary frequency. Plaintiff denied back pain at that time. (*Id.*, ¶ 10). On October 15, 2010, Dr. Crompton entered an order for Mobic pain medication on Plaintiff's behalf. (*Id.*, ¶ 11). Plaintiff was also seen by a nurse that same date after he injured himself when his cell door reportedly closed and hit his face and hand. (*Id.*, ¶ 12). Plaintiff's wounds were cleaned, antibiotic ointment was applied and he was directed to follow up with medical as needed. (*Id.*)

Plaintiff's medical records show that on October 16, 2010, in response to an inquiry regarding new athletic shoes, Plaintiff was directed to bring his old shoes to his appointment. (*Id.*, ¶ 13). On October 24, 2010, Plaintiff requested to be seen by medical staff to obtain weight restrictions due to his back injuries. (*Id.*, ¶ 14).

Plaintiff was subsequently seen by a nurse, during which time he reported his history of low back pain and degenerative disc disease, and stated that x-rays of his back were previously ordered but not done. (*Id.*) The nurse referred Plaintiff to Dr. Crompton. (*Id.*)

Dr. Crompton saw Plaintiff the following day on October 28, 2010 for a chronic care appointment. (*Id.*, ¶ 15). During the appointment, Plaintiff made complaints of urinary frequency and Dr. Crompton prescribed medication for urinary frequency and ordered a follow up appointment one month later. (*Id.*) Plaintiff's medical records do not reflect that he made any complaints regarding his back pain, degenerative disc disease or the desire for any x-rays at the October 28, 2010 appointment, nor does Dr. Crompton recall any such discussions. (*Id.*, ¶ 16). If Plaintiff did discuss any issues related to his back pain at the October 28, 2010 appointment, it was not a significant part of the visit or it would have been addressed in Dr. Crompton's notes; the focus of Plaintiff's complaints and treatment on October 28, 2010 was hypertension and urinary frequency. (*Id.*)

Even if Plaintiff had addressed his back pain on October 28, 2010 or indicated a desire for x-rays, it would not have changed the treatment provided by Dr. Crompton. (*Id.*, ¶ 17). More specifically, Plaintiff suffers from chronic low back pain due to degenerative, post-traumatic arthritic changes in his back, and x-rays would not change the medical management of his condition. (*Id.*) In the absence of a recent trauma or other indications not applicable here, chronic back pain such as that suffered by Plaintiff is handled symptomatically. (*Id.*) X-rays were not necessary; rather, chronic low back pain is appropriately treated with pain medication to manage the patient's comfort level. (*Id.*) Plaintiff's records show that he was continuously prescribed pain medications, which were routinely monitored and changed in response to Plaintiff's medical complaints. (*Id.*, ¶ 18).

As requested by Dr. Crompton on October 28, 2010, Plaintiff had a follow up appointment with him on November 22, 2010. (*Id.*, ¶ 19). During the November 2010 appointment, Plaintiff reported chronic nasal congestion, but had no complaints regarding his urinary issues. (*Id.*) Dr. Crompton examined Plaintiff, noted his urinary issue had resolved with the prescription change made in October 2010, and determined that Plaintiff was suffering from allergies. As a result, Dr. Crompton prescribed nasal spray. (*Id.*) Plaintiff's medical records do not reflect that he made any complaints regarding his back pain, degenerative disc disease or the desire for any x-rays at the November 22, 2010 appointment, nor does Dr. Crompton recall any such discussions. (*Id.*, ¶ 20). If Plaintiff did discuss any issues related to his back pain at the November 22, 2010 appointment, it was not a significant part of the visit or it would have been addressed in Dr. Crompton's notes; the focus of Plaintiff's complaints and treatment on November 22, 2010 was nasal congestion. (*Id.*) Nonetheless, even if Plaintiff had addressed back pain with Dr. Crompton on November 22, 2010 or requested x-rays, it would not have changed Dr. Crompton's

treatment of Plaintiff because his chronic pain was appropriately treated with pain medication; x-rays would not have been necessary. (*Id.*, ¶ 21). Notably, Plaintiff was seen by a nurse two days later on November 24, 2010, during which he made no medical complaints nor were any injuries or abnormalities observed. (*Id.*, ¶ 22).

On December 5, 2010, Plaintiff's chart was reviewed by a nurse based on his request to re-order his Tylenol pain medication. (*Id.*, ¶ 23). On December 7, 2010, Dr. Crompton ordered a prescription for pain medication on Plaintiff's behalf. (*Id.*) Dr. Crompton next saw Plaintiff on December 24, 2010 for a chronic care appointment. (*Id.*, ¶ 24). Upon examination, Dr. Crompton noted that Plaintiff was suffering from urinary issues, but not back pain. (*Id.*, ¶ 24). Dr. Crompton increased Plaintiff's hypertension medication to treat the urinary issues and directed Plaintiff to return for a chronic care appointment in six months. Dr. Crompton also renewed Plaintiff's prescription for his pain medication, Mobic, for one year. (*Id.*)

On February 2, 2011, Plaintiff submitted a kite complaining that he was suffering chronic back and foot pain, and that his medications were ineffective. (*Id.*, ¶ 25). As a result, Plaintiff was seen by a nurse on February 10, 2011 who examined Plaintiff and noted that his left foot was tender and that he had limited range of motion in his back due to pain. (*Id.*) Plaintiff reported no recent injury and denied pain down his legs, and complained that his pain medication was not helping. (*Id.*) The nurse scheduled an appointment for Plaintiff with a medical provider. (*Id.*) As a result, Dr. Crompton saw Plaintiff for his complaints of pain on February 15, 2011. (*Id.*, ¶ 26). During the appointment, Plaintiff reported that Mobic was no longer effective for his back pain. (*Id.*) Dr. Crompton observed that Plaintiff ambulated without difficulty. (*Id.*) Dr. Crompton further examined Plaintiff's back and noted mild increased paravertebral muscle tone in his lumbar region, without atrophy or asymmetry to the muscle mass. (*Id.*) Based on his medical examination, Dr. Crompton concluded that Plaintiff suffered from chronic lumbago (low back pain), changed his NSAID prescription and directed Plaintiff to follow up as needed. (*Id.*) During the appointment, Plaintiff additionally reported prior fractures to his feet resulting in chronic pain to his heels and toes, particularly on the left side. (*Id.*, ¶ 27). Dr. Crompton noted that Plaintiff already had an athletic shoe detail but that he reported chronic pain with weightbearing despite his accommodation. (*Id.*) As a result, in addition to the change in his pain medication, Dr. Crompton ordered insoles for Plaintiff's shoes. (*Id.*)

Plaintiff's medical records show that he was subsequently seen by a physician's assistant on June 1, 2011 for additional complaints of back and foot pain. (*Id.*, ¶ 28). Plaintiff reported that he suffered stiffness in his back in the morning. (*Id.*) In addition, Plaintiff's left foot was observed to be inflamed and painful; his right foot was less bothersome with regard to pain. (*Id.*) Plaintiff was observed to be wearing high top athletic shoes and walked gingerly, but without a limp and was fully weight-bearing. (*Id.*) During the appointment, Plaintiff indicated that he

desired x-rays to show he requires surgery. (*Id.*) The physician's assistant advised Plaintiff that he would not be a candidate for surgery because he was able to ambulate without assistance and he was able to perform activities of daily living. (*Id.*) No new changes to Plaintiff's condition were observed and his pain was persistent, but not worsening. (*Id.*) Plaintiff was advised that x-rays would not change this outcome. (*Id.*) Plaintiff was also advised to follow up as needed. (*Id.*) Plaintiff was transferred to a different correctional facility on July 20, 2011. (*Id.*, ¶ 29).

Dr. Crompton did not deny Plaintiff medical treatment for any medical concerns or symptoms, nor did he ever disregard, refuse to honor or otherwise ignore any of Plaintiff's medical needs. (*Id.*, ¶ 30). Instead, Dr. Crompton exercised sound medical judgment in the treatment he provided Plaintiff and the steps he took in providing treatment were within the standard of care exercised by physicians in similar circumstances. (*Id.*) Plaintiff's medical records show that he suffered from chronic low back pain due to degenerative, post-traumatic arthritic changes in his back. (*Id.*, ¶ 31). His condition was long-standing and manageable; it was not increasing nor was Plaintiff suffering from other medical issues related to his low back pain. (*Id.*) Plaintiff's chronic back pain was appropriately addressed by treating the symptoms in order to manage his comfort level: he received numerous pain medications and instructions regarding exercises. (*Id.*) With regard to his chronic foot pain, Plaintiff additionally received prescription athletic shoes. (*Id.*) Plaintiff does not require x-rays nor does he require any special consultation because neither is medically indicated for his conditions. (*Id.*)

Defendant's Brief at pp. 1-7 (docket no. 35).

The uncontested record before the court demonstrates that Dr. Crompton did not ignore plaintiff's requests for medical care. Rather, the doctor provided medical care to plaintiff on a number of occasions. The Sixth Circuit distinguishes "between cases where the complaint alleges a complete denial of medical care and those cases where the claim is that a prisoner received inadequate medical treatment." *Westlake v. Lucas*, 537 F.2d 857, 860 n. 5 (6th Cir. 1976). This action falls in the latter category. "[W]here a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law." *Graham ex rel. Estate of Graham v. County of Washtenaw*, 358 F.3d 377, 385 (6th Cir. 2004), quoting *Westlake*,

537 F.2d at 860 n. 5. Where a plaintiff disagrees with a doctor's medical judgment and wants to have treatment contrary to that judgment, this disagreement does not rise to the level of a federal constitutional claim. *See Woodberry v. Simmons*, 146 Fed.Appx. 976, 977 (10th Cir. 2005) ("a difference of opinion between a prisoner and the prison medical staff about medical treatment does not constitute deliberate indifference"); *Owens v. Hutchinson*, 79 Fed. Appx. 159, 161 (6th Cir. 2003) ("[a] patient's disagreement with his physicians over the proper medical treatment alleges no more than a medical malpractice claim, which is a tort actionable in state court, but is not cognizable as a federal constitutional claim"); *Wright v. Genovese*, 694 F.Supp.2d 137, 155 (N.D.N.Y. 2010) ("[d]isagreements over medications, diagnostic techniques, forms of treatment, the need for specialists, and the timing of their intervention implicate medical judgments and not the Eighth Amendment"). Accordingly, Dr. Crompton is entitled to summary judgment on plaintiff's Eighth Amendment claim. This would result in a dismissal with prejudice.

### IV. Plaintiff's motion for voluntary dismissal

In lieu of filing a response to Dr. Crompton's motion for summary judgment, plaintiff filed a document entitled, "Motion to Dismiss, Voluntarily" (docket no. 39). In this motion, plaintiff asked to dismiss his action without prejudice, stating:

> This request is made in light of the evidence presented by Mr. Crompton's Attorney explaining that there is nothing short of reconstructive surgery available to prisoners, not including the very basic of medical care. For anything else is just too expensive.

Motion to Dismiss (docket no. 39). The court construes this motion as one for voluntary dismissal pursuant to to Fed. R. Civ. P. 41(a)(2), which provides in relevant part that:

> Except as provided in Rule 41(a)(1) [not applicable here], an action may be dismissed at the plaintiff's request only by court order, on terms that the court considers proper. . . Unless the order states otherwise, a dismissal under this paragraph (2) is without prejudice.

11

Fed. R. Civ. P. 41(a)(2).

The undersigned has recommended that Dr. Crampton's motion for summary be granted and that the other defendant, "Administrator for Bureau Health Care Services, Policy and Practice Maker" be dismissed for lack of prosecution. Plaintiff's response to defendant's motion for summary judgment does not meet the merits of defendant's motion and should not be allowed to deprive defendant of a final resolution, with prejudice, to which he is entitled at this stage of the proceedings. If the court determines that defendant Dr. Crompton is not entitled to summary judgment or that the "Administrator for Bureau Health Care Services, Policy and Practice Maker" should not be dismissed, then plaintiff's action should be voluntarily dismissed without prejudice pursuant to Fed. R. Civ. P. 41(a)(2).

**IV.     Recommendation**

For the reasons set forth above, I respectfully recommend that the defendant identified as "Administrator for Bureau Health Care Services, Policy and Practice Maker" be dismissed for lack of prosecution, that Dr. Crompton's motion for summary judgment (docket no. 35) be **GRANTED** and that this action be **DISMISSED**, with prejudice.

In the alternative, I recommend that plaintiff's motion for voluntary dismissal (docket no. 39) be **GRANTED** and that this action be **DISMISSED**, with prejudice.


Dated:  February 11, 2013                              /s/ Hugh W. Brenneman, Jr.
                                                       HUGH W. BRENNEMAN, JR.
                                                       United States Magistrate Judge

ANY OBJECTIONS to this Report and Recommendation must be served and filed with the Clerk of the Court within fourteen (14) days after service of the report. All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b). Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order. *Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).